UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.: 04-11939-JGD

)
MICHAEL J. WHALON,                   )
                                     )
            Plaintiff,               )
                                     )
v.                                   )
                                     )
CHRISTY'S OF CAPE COD, LLC,          )
                                     )
            Defendant.               )
_____)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Michael J. Whalon ("Plaintiff" or "Whalon") advances a claim of discriminatory discharge against Christy's of Cape Cod, LLC ("Defendant" or "Christy's"), asserting that Christy's terminated his employment in February 2002 on the basis of his alleged disability, which was identified during the discovery process as bipolar disorder or "manic depression."

In or about September 2004, Plaintiff initiated this action in the United States District Court for the District of Massachusetts by filing a three-count Complaint claiming discriminatory discharge in violation of the Massachusetts Antidiscrimination Statute, M.G.L. c. 151B (Count I); the Americans With Disabilities Act (Count III); and an unspecified claim for "wrongful discharge" (Count II).

Summary Judgment is appropriate as to all counts in this case because Plaintiff has not and cannot set forth facts supporting the necessary elements of his claims.

First, the uncontroverted facts demonstrate that Christy's did not learn that Plaintiff allegedly suffered from "panic attacks," "chest pains," or any condition implicating the Plaintiff's mental or emotional health until after a disciplinary meeting on February 22, 2002 in which Plaintiff was told by the company's Vice President and Chief Operating Officer that he was going to terminate his employment; a termination which was converted after that announcement into a short suspension to permit further investigation. A decision to terminate was made within five (5) days, and implemented a few weeks later following Plaintiff's intervening medical leave. Defendant did not learn that Plaintiff allegedly suffered from bipolar disorder until the commencement of discovery in this lawsuit.

Second, Plaintiff cannot set forth facts showing that he is substantially limited in any major life activity and thus cannot demonstrate that he is disabled as that term is used under either federal or Massachusetts law

Third, even if Plaintiff sets forth a *prima facie* case of discrimination, he cannot point to a shred of evidence suggesting that the reasons behind his termination were pretextual. Moreover, his claim for wrongful termination is no more than a recast of his statutory discrimination claims and, as such, is barred. Accordingly, summary judgment should enter in favor of Christy's as to all counts.

## ARGUMENT

### I.    *Standard of Review.*

Summary judgment is appropriate where, as here, there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Quinones v. Buick, 436 F.3d 284, 289 (1st Cir. 2006). Fed. R. Civ. P. 56(c).

The burden of showing that no genuine issue of material fact exists rests initially on the moving party. See Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), cert. denied 429 U.S. 1038 (1977). "This burden ... may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once a properly supported motion for summary judgment has been made, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Fed. R. Civ. P. 56(e). No issue for trial exists unless the nonmoving party can demonstrate sufficient evidence favoring its case such that a reasonable jury could return a verdict in the nonmoving party's favor. Id. at 249. Rule 56 requires the entry of summary judgment if there was adequate time for discovery and a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

"Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

There are no issues of material fact in dispute in this case. Indeed, the facts as developed during extensive discovery conducted by the parties over nearly two years demonstrate that no issues for trial exist, and that no reasonable jury could return a verdict in Plaintiff's favor, even drawing all inferences in favor of the nonmoving party,

3

as this Court is compelled to do in ruling upon Defendant's Motion for Summary

Judgment.  See Metropolitan Life Insurance Co. v. Ditmore, 729 F.2d 1, 4 (1st Cir. 1984).

## II.    It is Well-Settled that Where, as Here, an Employer Has No Knowledge of the Alleged Disability at the Time of the Adverse Employment Action, the Plaintiff Cannot Maintain a Claim for Disability Discrimination.

It is axiomatic that where an employer does not know of an employee's alleged

disability, it cannot be held liable for either taking an adverse employment action against

that employee, or for failing to "reasonably accommodate" that employee's disability.[1]

Though some courts analyze the issue as one of establishing a prima facie case, while

others consider it as precluding a demonstration of pretext, the cases are in universal

agreement that the employer cannot be held liable.[2]

---

[1]    While it is Christy's position that Whalon has neither pled in his Compliant, nor developed as part of the Summary Judgment record, any evidence supporting a claim of failure to accommodate, the cases cited in this section demonstrate that under either theory, an employer cannot be held liable for a disability of which it is unaware. See, e.g., Gantt v. Wilson Sporting Goods Co., 143 F.3d 1042, 1046-47 (6th Cir. 1998) (Employer has notice of employee's disability when the employee tells the employer that he is disabled; "The employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation"). 29 C.F.R. pt. 1630 App. § 1630.9, generally "it is the responsibility of the individual with a disability to inform the employer than an accommodation is needed." See also Morisky v. Broward County, 80 F.3d 445, 448 (11th Cir. 1996) (no prima facie case made; "[v]ague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA"); Lyons v. Legal Aid Society, 68 F.3d 1512, 1515 (2d Cir. 1995); Adams v. Rochester Gen'l Hospital, 977 F.Supp 266, 235-36 (WDNY 1997) ("Employers are not required to be clairvoyant as to hidden medical problems of their employees and provide assistance where none is requested"); Carlson v. Inacom Corp., 885 F.Supp. 1314, 1322-23 (D. Neb. 1995) (even where employee suffers from disability and is "otherwise qualified," employer does not fail to accommodate where it does not have knowledge of the disability; Pridemore v. Rural Legal Aid Society of West Central Ohio, 625 F.Supp. 1180 (S.D. Ohio 1985) (statement in letter from applicant to interview committee that he suffered from "miniscule brain damage to the perceptual and sensory-motor areas of the brain" insufficient to put employer on notice that he suffered from cerebral palsy and needed testing accommodation).

Furthermore, Christy's would submit that even in the event Mr. Whalon did state a claim for a failure to provide a reasonable accommodation, the uncontested evidence demonstrates that it did reasonable accommodate Mr. Whalon after learning of his "anxiety" condition by providing him with all of the requested leave time. SMF16.

[2]    Though this section largely discusses federal precedent interpreting the Americans with Disabilities Act or the Rehabilitation Act, the same principle applies under M.G.L. c. 151B. See, e.g., Dziamba v. Warner & Stackpole, LLP, 56 Mass.App.Ct. 397, 406 (2002) (court rejects attempt by employee suffering from depression to assert that his declining productivity was occasioned by discrimination on the part of law firm partners, where undisputed evidence demonstrated that partners were

In <u>Hedberg v. Indiana Bell Telephone Co.</u>, 47 F.3d 928 (7th Cir. 1995), the court

upheld summary judgment in favor of an employer who had no knowledge of an

employee's alleged disability when deciding to terminate him as part of a restructuring

program. Even though the employee told his immediate supervisor that he may have a

"possible major health problem" in advance of the meeting at which he was selected for

termination, (the supervisor did not participate), the Court accepted the uncontroverted

affidavits of the decision-makers affirming that they were unaware of the employee's

alleged condition. The Appeals Court rejected the employee's argument that his

comment to the supervisor had put the employer on notice, finding it to be nothing more

than "unsupported speculation." <u>Hedberg</u>, 47 F.3d 928, 931-32 (7th Cir. 1995). The

court concluded that the employer's lack of knowledge was fatal to the employee's claim,

looking both to "simple logic" and the conclusions of other courts in considering

"analogous issues:"

> ... an employer cannot be liable under the ADA for firing an employee when it
> indisputably had no knowledge of the disability. At the most basic level, it is
> intuitively clear when viewing the ADA's language in a straightforward manner
> that an employer cannot fire an employee "because of" a disability unless it
> knows of the disability. If it does not know of the disability, the employer is
> firing the employee "because of" some other reason.

<u>Hedberg</u>, 47 F.3d 932. Furthermore, even if, as employee alleged, the employer had

some knowledge of the *symptoms* of his disability: "[a]llowing liability when an

employer indisputably had no knowledge of the disability, but knew of the disability's

---

reluctant to assign work to him before learning of his illness). In the context of reasonable accommodation,
the Massachusetts Appeals Court in <u>Leach v. Commissioner of the Massachusetts Rehabilitation Comm.</u>,
63 Mass.App.Ct. 563 (2005) held that an employer is not obligated to anticipate employee's need for
accommodation for repetitive stress injury without a request by plaintiff. <u>See</u> <u>also</u> *MCAD Guidelines:
Employment Discrimination on the Basis of Handicap – Chapter 151B*, Section VII.A (1998).
Accordingly, dismissal of Whalon's 151B count (Count I) is equally appropriate.

effects, far removed from the disability itself and with no obvious link to the disability, would create an enormous sphere of potential liability." Hedberg, 47 F.3d at 934. See also Sever v. Henderson, 381 F.Supp.2d 405, 419 (M.D. Pa. 2005) (no violation of Rehabilitation Act where decision-maker with no knowledge of employee's mental disability terminates him for threatening conduct. Even if employee communicated disability information, it does not support an inference that employer had knowledge that employee was substantially limited in a major life activity. "[I]t is incumbent upon the employee to 'show that the employer knew of [the] employee's substantial physical or mental limitation' resulting from the diagnosed impairment." quoting Taylor v. Principal Financial Group, infra); Crandall v. Paralyzed Veterans of America, 146 F.3d 894, 897 (D.C. Cir. 1998) (Rehab Act claim fails because "the employer must have acted with an awareness of the disability itself, and not merely an awareness of some deficiency in the employee's performance that might be a product of an unknown disability").

In Kocsis v. Multi-Care Management, 97 F.3d 876, 884 (6th Cir. 1996), the Sixth Circuit upheld summary judgment for the employer of an employee who brought an ADA claim alleging failure to promote, reassignment and constructive discharge asserting that the employer was aware of his "health problems, lack of energy and mood swings." The court held that such knowledge was insufficient to show that employer discriminated against her "because of" a disability.

Numerous cases have considered issues relating to an employer's awareness of mental health issues and have universally found that where, as in this case, there is no question that the employer lacked actual or constructive knowledge of the disability, summary judgment must enter in its favor.

In <u>Taylor v. Principal Financial Group</u>, 93 F.3d 155 (5th Cir. 1996), <u>cert</u>. <u>denied</u> 519 U.S. 1029 (1996), the employee informed his supervisor during a performance review in which he was placed onto a six-month performance improvement plan that he suffered from bipolar disorder. The employer had no knowledge of his disability prior to placing him on the plan, and did so for legitimate performance reasons related to poor performance and falsification of records.

In upholding summary judgment in favor of the employer, the Court of Appeals held that: "[t]o prove discrimination, an employee must show that the employer knew of such employee's substantial physical or mental limitation." <u>Taylor</u>, 93 F.3d 155, 163. As in <u>Hedberg</u>, <u>supra</u>, the Court distinguished between an employer's knowledge of diagnosis, versus knowledge of the employee's limitations, noting that under the ADA an employer is obligated to accommodate limitations, not disabilities. <u>Taylor</u>, 93 F.3d at 164. In this case, the employee merely told his supervisor that he was "diagnosed" with BPD and asked employer to "investigate" the condition. <u>See</u> <u>also</u> <u>Hammon v. DHL Airways, Inc.</u>, 165 F.3d 441 (6th Cir. 1999) (summary judgment affirmed for employer where pilot informed supervisors that he had suffered a "loss of confidence" but did not indicate that such emotional problems were caused by a disability); <u>Mihalko v. Potter</u>, Civ. A. No. 00-2076, 2003 WL 23319594 at *10-11 (W.D.Pa. 2003) (plaintiff failed to establish that employer knew Plaintiff was actually disabled where employer did not know of any substantial limitations resulting from Plaintiff's depression); Stola v. Joint Industry Board, 889 F.Supp. 133 (SDNY 1995) (summary judgment proper where employer who terminated employee for performance subsequently learned that employee

suffered from anxiety disorder.  Given information "known and reasonably chargeable to it," employer had no knowledge of alleged disability at time of termination").

  In <u>Rogers v. CH2M Hill, Inc.</u>, 18 F.Supp.2d 1328 (M.D. Ala. 1998), the Court granted summary judgment to employer where employee alleged he had informed employer he suffered "clinical depression" after being terminated for poor performance. Plaintiff had never before told employer that he had the illness, nor had he sought accommodation.   Noting that an employer's knowledge of the alleged disability is required by the ADA, and "in light of the internal, mental nature" of the former employee's problem, court concluded that "summary judgment is required in this case simply because [employee] failed to notify [employer] of his depression and anxiety." <u>Rogers</u>, 18 F.Supp.2d 1328, 1335.  Further, "[i]t is well-accepted [] that ignorance by the employer of the employee's disability is a reason for granting summary judgment in favor of the employer." <u>Rogers</u>, 18 F.Supp.2d at 1336.  The court further noted that the burden lies with the plaintiff to present sufficient evidence to impute knowledge of disability to employer. <u>Id.</u> at 1337 <u>citing</u> <u>Taylor</u>, 93 F.3d 155 at 165-66.

  In rejecting the employee's argument that the employer had "imputed knowledge of his disability based upon his conduct, the court noted it was "inclined to believe that symptoms of depression or anxiety could never clearly be such manifestations of an illness that the employer would be held to have imputed knowledge of that illness … [t]his court comes close to believing it to be impossible for this to ever be proven in the case of depression or anxiety, however." Id. at 1336-37.  <u>Citing</u> <u>Hedberg</u>, <u>supra</u>, for the proposition that the ADA "does not require clairvoyance," court concludes "[a]n employer would probably never be held to have imputed knowledge of a depression or an

8

anxiety disorder of its employee.  Asking the employer to guess at such is asking too much of the employer, and of the ADA."  Id. at 1337.  Brown v. BKW Drywall, 305 F.Supp.2d 814, 828-30 (S.D. Ohio 2004) (summary judgment appropriate where employee failed to establish that he suffered from a disability or that employer had actual or constructive knowledge of the alleged disability); Burns v. City of Columbus, 91 F.3d 836, 844 (6th Cir. 1996) (to prove "constructive knowledge," plaintiff must show that employer knew or should have known of symptoms of the disability and also knew or should have known that they symptoms were caused by a disability).

In Lippman v. Sholom Home, 945 F.Supp. 188 (D. Minn. 1996), the court granted summary judgment on the factual ground that the employer did not know of plaintiff's attention deficit disorder prior to terminating him for unsatisfactory attendance and failure to follow schedule.  Like Mr. Whalon, the employee received multiple letters informing him that he had been terminated yet he thereafter began to submit documentation asserting a mental health condition.  On April 5, employee requested unpaid leave of absence and informed the employer, for the first time, that he believes he suffers from attention deficit disorder.  Employer neither responds to request nor grants the leave.

Finding on the uncontroverted facts that the employer's termination decision had been made and communicated weeks before it learned of the employee's disability, the court found it unnecessary to reach issue of whether the former employee has made out a prima facie case because "as a matter of law, an employer cannot be liable for a discriminatory discharge if, at the time of the discharge, the employer had not been informed of the disability and has no reason to know of the disability."  Lippman, 945

F.Supp. 188, 191 citing Miller v. National Cas. Co., 61 F.3d 627, 629-30 (8th Cir. 1995);

Larson v. Koch Ref. Co., 920 F.Supp. 1000, 1005 (D. Minn. 1996).   Rejecting

employee's argument that liability attached because he informed employer of medical

problems before his last day of paid employment, the court explained that "[t]he critical

date is when [the employer] made the decision to terminate [plaintiff], not the last day he

was paid by [employer].  Id. at n. 3, citing Hedberg, 47 F.3d at 934; Magruder v. Runyon,

844 F.Supp. 696, 705 (D. Kan 1994), aff'd 54 F.3d 787 (10th Cir. 1995).

In this case, the operative facts are not only undisputed, they compel summary

judgment in favor of Defendant Christy's of Cape Cod.

First, it is undisputed that Mr. McKeown met with Mr. Whalon in a disciplinary

meeting on February 22, 2002, and expressed an intention to terminate Mr. Whalon's

employment at that time.  Both Mr. McKeown, Mr. Whalon and the various documents

developed during discovery are consistent on this point.  SMF 10, 11, 16 & 20.

Second, despite his decision to thereafter temporarily suspend Mr. Whalon

pending a brief period of further investigation, it is also undisputed that Mr. McKeown

decided to terminate Mr. Whalon's employment between February 22 and February 27,

2002.  SMF 11.

Third, both Mr. McKeown and Mr. Whalon (albeit reluctantly) testified that

McKeown had no knowledge of any mental health conditions affecting Mr. Whalon prior

to his receipt of the initial doctor's note Mr. Whalon faxed to Mr. McKeown on February

28, 2002 – after Mr. McKeown had reached his termination decision.  SMF 14, 15.[3]

---

[3]     Even if Mr. Whalon had received the three (3) medical notes prior to making a decision on the continuation of Mr. Whalon's employment, it is Christy's position that the content of the three notes does not even approach providing notice to the employer that Mr. Whalon suffered from a disability as that term is defined under the ADA, or a handicap as that term is defined under Chapter 151B.

Additional notes, dated March 7 and 21, 2002, were subsequently received by McKeown. SMF 17, 18.

Unlike the precedent above in which reviewing courts debated whether the information provided to the employer/decision-maker constituted "actual or constructive notice," of the claimed disability, there is simply no evidence in this summary judgment record to support a claim that Christy's knew of Mr. Whalon's claimed disability at the time Mr. McKeown made the decision to terminate his employment. The only claim Mr. Whalon was able to make was that he had told two co-employees that he was going to a counseling appointment. SMF 15. Such a claim, even if proven true, is wholly speculative and does not come close to furnishing notice. See Hedberg, supra, regarding "unsupported speculation." Even in the cases discussed above where certain information was provided by the employee, summary judgment still entered in favor of the employer. See Taylor, supra, (employee allegedly informed employer he was bipolar); Rogers, supra, (employee alleged that he told employer he had clinical depression); Lippman, supra.

In light of the uncontested factual record in this case, Plaintiff cannot maintain his claims under either the ADA or Chapter 151B and summary judgment should enter for Christy's on both Counts I and III.

### III.    The Record Evidence Does Not Show That Plaintiff is Substantially Limited in a Major Life Activity.

The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). In this case, Mr. Whalon asserts that he is covered by Section (A).

11

The operative question for the Court to determine is whether Plaintiff's diagnosis of bipolar disorder substantially limits one of his major life activities.

It is well-settled that the determination of whether an impairment substantially limits a person's major life activities is an individualized inquiry. <u>Toyota Motor Mfg. v. Williams</u>, 534 U.S. 184, 198-99 (2002); <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 483 (1999). No impairment constitutes a per se disability; rather, an impairment can constitute a disability if it limits the major life activities of the particular individual who is impaired. <u>Sutton</u>, 527 U.S. at 483. In determining whether a person is substantially limited in major life activities, the court must consider any corrective measures the plaintiff takes to ameliorate his condition. <u>See</u> <u>Sutton</u>, 527 U.S. at 482.

To qualify as a disability under the ADA, an impairment must "limit an individual, not in a trivial or even moderate manner, but in a major way." <u>Gonzales v. National Board of Med. Examiners</u>, 225 F.3d 620, 627 n. 12 (6th Cir. 2000). Indeed, "impairments which merely *affect* major life activities" must be distinguished "from those that *substantially limit* those activities." <u>See</u> <u>Ryan v. Grae & Rybicki</u>, 135 F.3d 867, 870 (2d Cir. 1998) (emphasis in original).

EEOC Regulations define the term "major life activity" as including "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The term "substantially limits" means inability to perform, or a severe restriction on the ability to perform, as compared to the average person in the general population. 29 C.F.R. § 1630.2(j)(1). In considering whether an individual is substantially limited in a major life activity, the Court should consider "(i) [t]he nature and severity of the impairment; (ii)[t]he duration or expected

12

duration of the impairment; and (iii)[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2).

With respect to the major life activity of working, "[p]roof that an individual cannot 'perform a single, particular job does not constitute [proof of] a substantial limitation in the major life activity of working." Sullivan v. Nieman Marcus Group, Inc., 358 F.3d 110, 115 (1st Cir. 2004) quoting Lebron-Torres v. Whitehall Labs, 251 F.3d 236, 240 (1st Cir. 2001). Instead, the Plaintiff must demonstrate that he is "significantly restricted in the ability to perform either a *class of jobs* or a *broad range of jobs in various classes* as compared to the average person having comparable training, skills and abilities." Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1167 (1st Cir. 2002) quoting 29 C.F.R. § 1630.2(j)(3)(i). (Emphasis in original).

Here, Mr. Whalon provides scant evidence that either: (1) a major life activity he claims is affected; or (2) that such major life activity is "substantially limited." Mr. Whalon fails to identify a "major life activity" affected by his alleged disability. In terms of the impact caused by the disability, all Mr. Whalon articulated during his deposition was "depression," "angry outbursts," and panic attacks, the frequency of which he could not quantify. He identified periodic marital strain, some difficulty maintaining household finances without his wife's assistance, difficulty dealing with others, and (apart from occasionally blurred vision), no other physical manifestations. SMF 22.

Numerous courts, after conducting an individualized inquiry, have repeatedly found that a particular employee's bipolar condition does not have a substantial impact on a major life activity and does not, therefore, rise to the level of a disability.[4]

With respect to the medical evidence in this case, upon which Plaintiff may attempt to anchor his claim of substantial impairment, neither of the two MDs deposed, (Drs. Kisch and Rakita), apparently treated Mr. Whalon prior to February 2002. And, to the extent the Court nonetheless deems their testimony admissible, Defendant submits that it does not establish the substantial impairment of a major life activity. SMF 23 & 24. Both Drs. Kisch and Rakita limited their care to medication management. As for Anne Kronenberg, RNCS, while she was treating Mr. Whalon before, during and after February/March 2002, her clinical assessment of Mr. Whalon's bipolar disorder differs markedly from Kisch, Rakita, and (Defendant would submit) most medical experts on bipolar disorder. Ms. Kronenberg asserts that Mr. Whalon contracted bipolar disorder due to his employment at Christy's. SMF 25. If correct, Ms. Kronenberg's assessment would mean that Mr. Whalon's claims are barred, in their entirety, by the exclusivity

---

[4]   See Hoeller v. Eaton Corp., 149 F.3d 621 (7th Cir. 1998) (rejecting claim that bipolar disorder substantially limited former employee in area of work because of affect on "though process," communication skills and interpersonal relationships); Edwards v. Dialysis Clinic, Inc., 423 F.Supp.2d 789 (S.D. Ohio 2006) (former employee with bipolar disorder not disabled under Ohio law despite claimed limitation on ability to sleep); Price v. Facility Management Group, Inc., 403 F.Supp.2d 1246 (N.D. Georgia 2005) (in finding bipolar disorder not to be a disability, court rejects former employee's suggestion that "interacting with others" is a major life activity); Starks-Umoja v. Federal Express Corp., 341 F.Supp.2d 979 (W.D. Tenn. 2003) (conclusory allegation of former employee with bipolar disorder is insufficient to defeat employer's motion for summary judgment); Horwitz v. Stickley, 122 F.Supp.2d 350 (NDNY 2000) (former employee not substantially limited under ADA despite claim not able to care for herself or socialize); Scherer v. GE Capital Corp., 59 F.Supp.2d 1132 (D. Kansas 1999) (bipolar employee not substantially limited despite claimed impact on concentration and interpersonal skills; summary judgment also granted because employer unaware of condition); Dupre v. Harris County Hospital Dist., 8 F.Supp.2d 908 (S.D. Texas 1998) (employees bipolar disorder not a substantial limitation on major life activity of working where insufficient evidence employee excluded from broad classification of jobs); Glowacki v. Buffalo Gen'l Hospital, 2 F.Supp.2d 346 (WDNY 1998) (court must determine if bipolar disorder is sufficiently severe to constitute disability; here, not a substantial limitation in area of working).

14

provisions of the Massachusetts Workmen's Compensation Act. See Foley v. Polaroid, 381 Mass. 545, 548-49 (1980).

Finally, with respect to employment, the summary judgment record demonstrates that Mr. Whalon has held a variety of jobs in a variety of occupations/fields before, during and after his employment at Christy's. SMF 21. He also had a lengthy and varied career at Christy's and its predecessor institution. Id. Even assuming, as he seems to suggest, that his bipolar condition precludes him from accepting certain managerial positions involving cash and cash accounting, id., this does not constitute a class of jobs or a broad range of jobs in various classes. See Bailey v. Georgia-Pacific, supra.

Accordingly, Mr. Whalon cannot sustain a claim of a substantial impairment to a major life activity based on working, or any other category.

Dismissal of Counts I and II is compelled on these facts.

### IV.    There is No Evidence in the Summary Judgment Record to Support a Finding that Mr. Whalon's Termination Was a Pretext for Unlawful Discrimination.

The First Circuit recently affirmed granting summary judgment to an employer where the employee advanced no evidence to meet her ultimate burden of advancing admissible evidence to prove that her termination was occasioned *because of* disability. Orta-Catstro v. Merck, Sharp & Dohme Quimica P.R., Inc., 447 F.3d 105, 111-12 (1st Cir. 2006). In Castro, the First Circuit noted that three elements are required to establish a prima facie case of discriminatory discharge under ADA:

> (1) that the employee is "disabled" within meaning of ADA;
> (2) that the employee is able to perform essential functions of job with or without reasonable accommodation; and
> (3) that the employee discharged or adversely affected, in whole or in part, because of disability.

As Mr. Whalon has failed to develop any evidence in this case supporting the third prong, dismissal of his claim under the ADA is compelled, and dismissal of his claim under Massachusetts law is advisable.

It is well-settled that to defeat summary judgment once employer has articulated presumptively legitimate reason for allegedly discriminatory conduct, an employee must do more than cast doubt on wisdom of employer's justification; the employee must introduce evidence that real reason for employer's actions was discrimination. Villanueva v. Wellesley College, 930 F.2d 124 (1st Cir. 1991). See also Thomas v. Eastman Kodak Co., 183 F.3d 38 (1st Cir. 1999); Udo v. Torres, 54 F.3d 9 (1st Cir. 1995); Hebert v. Mohawk Rubber Co., 872 F.2d 1104 (1st Cir. 1989).

In this case, there can be no question that Christy's, through the testimony of Mr. McKeown, has articulated a legitimate, good faith business reason justifying his decision to terminate Mr. McKeown's employment. See SMF 9-13. While Mr. Whalon for his part has questioned the actions of Christy's and Mr. McKeown during the lengthy discovery process – even going so far as to try and recast this case as a referendum over whether or not Mr. McKeown believes that Mr. Whalon was "personally responsible" for the monetary shortages – the simple fact remains that he has adduced no evidence whatsoever, either direct or circumstantial, to allow a reasonable juror to conclude that Mr. McKeown's true motivation was a pretext of discrimination. Indeed, as noted in Section II above, it is doubtful that he will ever be able to do so in the absence of any evidence that Mr. McKeown even knew that he was allegedly disabled at the time he decided to terminate his employment. See Section II, supra, and cases cited.

As the First Circuit recently noted, at the summary judgment stage of an employment discrimination claim, an employee must produce evidence to create a genuine issue of fact with respect to two points: whether the employer's articulated reason for its adverse action was a pretext, and whether the real reason was discrimination. Quinones v. Buick, 436 F.3d 284 (1st Cir. 2006).

Mr. Whalon utterly fails to do so, basing his claim instead on the unsupported propositions that: (a) McKeown knew of his alleged disability; and (b) that he terminated him because of it. Indeed, the courts have noted that even in employment discrimination cases, where elusive concepts such as motive or intent are at issue, summary judgment is compelled where the non-moving party, as here, rests merely upon conclusory allegations, improbable inferences, and unsupported speculation. Feliciano de la Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1 (1st Cir. 2000). See also Oliver v. Digital Equipment Corp., 846 F.2d 103 (1st Cir. 1988)

Given the Plaintiff's failure, throughout the discovery process, to develop any evidence whatsoever (apart from his own opinion and speculation) not only that the Defendant's justification for terminating his employment was a pretext, but also that it was a pretext for unlawful discrimination, summary judgment should enter in favor of Christy's dismissing Counts I and III of Plaintiff's Complaint.

### V.    The Americans with Disabilities Act and M.G.L. c. 151B Provide the Exclusive Remedies for Disability Discrimination Claims in Massachusetts, and Thus Plaintiff's Wrongful Termination Claim Is Barred.

Plaintiff advances a vague "wrongful termination" claim as Count II of his Complaint. In support of this claim, Mr. Whalon merely points to the same facts supporting his statutory discrimination claims under the Americans with Disabilities Act

17

and M.G.L. c. 151B, and merely attaches a different label. Plaintiff asserts no facts in his Complaint, nor does he establish any facts in the summary judgment record, to support a cause of action under either of the Massachusetts common-law wrongful termination claims: termination in violation of public policy[5] or violation of the implied covenant of good faith and fair dealing.[6]

It is well settled in this jurisdiction that the state anti-discrimination statute, Chapter 151B, provides the exclusive remedy for discrimination claims. See, e.g., Charland v. Muzi Motors, Inc., 417 Mass. 580, 586 (1994) ("G.L. c. 151B provides the exclusive remedy for employment discrimination not based on preexisting tort law or constitutional protections"); Guzman v. Lowinger, 422 Mass. 570 (1996) ("[t]he Legislature has provided a comprehensive remedial scheme for victims of [discrimination] in the workplace . . . where G.L. c. 151B applies, its procedural prerequisites may not be bypassed by reconstituting a sexual harassment claim as a [statutory]violation or as a new common law claim").

To allow Mr. Whalon to recast his statutory discrimination claims as common-law wrongful termination claims would be to afford a plaintiff a duplicative remedy and to affront the legislative intent in enacting a comprehensive remedial scheme to address

---

[5]    An at-will employee has a cause of action for wrongful termination where his termination violates a clearly established and dominant public policy, as where he is terminated for asserting a legally guaranteed right, for doing what the law requires, or for refusing to do that which the law forbids. King v. Driscoll, 418 Mass. 576, 582 (1994); Wright v. Shriners Hosp. for Crippled Children, 412 Mass. at 472. It is well-settled that a public policy claim is unavailable where the alleged wrong is protected by a comprehensive remedial statute such as M.G.L. c. 151B. See Melley v. Gillette Corp., 19 Mass.App.Ct. 511 (1985), aff'd, 397 Mass. 1004 (1986) (age discrimination claim cannot be vindicated as termination in violation of public policy)

[6]    See Fortune v. National Cash Register Co., 373 Mass. 96, 101 (1977). Cause of action may lie at common law where employer terminates employee to avoid payment of due commissions.

discrimination in the workplace. <u>Melley</u>, 19 Mass. App. Ct. at 513; <u>Charland</u>, 417 Mass.

at 585. As the Massachusetts Appeals Court noted in <u>Melley</u>:

> We think that where, as here, there is a comprehensive remedial statute,
> the creation of a new common law action based on the public policy
> expressed in that statute would interfere with that remedial scheme. Not
> only would the legislative preference for an administrative solution be
> circumvented, but serious problems would be posed as to the extent of the
> remedy to be provided.

<u>Melley</u>, 19 Mass. App. Ct. at 513.[7]

State and federal courts agree that: (1) the ADA and Chapter 151B provide the

exclusive remedy to disability discrimination plaintiffs; and thus necessarily (2) common

law claims of discrimination, such as the wrongful termination claim advanced by Mr.

Whalon are barred. Discrimination plaintiffs in Massachusetts are not allowed to have

two bites at the apple, and Count II of Plaintiff's Complaint should be dismissed.

---

[7]    Applying Massachusetts law, federal courts in this circuit have similarly found that Chapter 151B provides the exclusive state remedy for plaintiffs pursuing discrimination claims. As the First Circuit concluded in <u>Woods v. Friction Material</u>:

> In sum, we agree with the district court that the adequacy of the remedies afforded under
> Mass. Gen. L. ch. 151B, the efficiency of a uniform legislative remedy, the importance of
> giving effect to the procedural prerequisites of Mass. Gen. L. ch. 151B, and the absence
> of clear guidance from the Massachusetts Supreme Judicial Court, all support the finding
> that Mass. Gen. L. ch. 151B is the exclusive state law remedy for employment
> discrimination complaints.

<u>Woods v. Friction Materials, Inc.</u>, 30 F.3d 255, 264 (1st Cir. 1994) <u>citing</u> <u>Woods v. Friction Materials, Inc.</u>, 836 F. Supp. 899, 908 (D. Mass. 1993); see also <u>Martin v. Envelope Div. of Westvaco Corp.</u>, 850 F. Supp. 83, 93-94 (D. Mass. 1994).

## CONCLUSION

For all of the foregoing reasons, Defendant Christy's of Cape Cod, LLC respectfully moves that the Court enter summary judgment in its favor as to all Counts of Plaintiff's Verified Complaint, and that the Court dismiss all Counts of Plaintiff's Complaint with prejudice.

Respectfully submitted.

DEFENDANT CHRISTY'S OF CAPE COD, LLC

By its attorney,

/s/ Thomas W. Colomb
Thomas W. Colomb, BBO # 638211
tcolomb@mhtl.com
Murphy, Hesse, Toomey & Lehane, LLP
300 Crown Colony Drive, Suite 410
P.O. Box 9126
Quincy, MA 02169-9126
(617) 479-5000

Dated:      August 11, 2006